**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LORETTA CUMMINGS, : | |
|    plaintiff, : | |
| : | |
| v. : | CASE NO. 3:16cv01372 (RAR) |
| : | |
| NANCY A. BERRYHILL, : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
|    defendant. : | |

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND/OR REMAND AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

Loretta Cummings ("plaintiff"), appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated August 25, 2015. (R. 19.). Plaintiff moves for an order reversing the decision, or in the alternative, remanding his case for rehearing. (Dkt. #16.) The Commissioner, in turn, has moved for an order affirming the decision. (Dkt. #17.)

For the reasons that follow, plaintiff's motion to reverse, or in the alternative, remand is GRANTED. The Commissioner's motion to affirm is DENIED.

## PROCEDURAL HISTORY AND BACKGROUND

On July 29, 2013, plaintiff filed an application for disability benefits, alleging disability beginning February 5, 2010. The claim was initially denied on December 11, 2013, and again denied on reconsideration on March 26, 2014. On May 1, 2014, plaintiff filed a written request for an administrative hearing. An oral hearing on the matter was held on June 8, 2015 before Administrative Law Judge ("ALJ") Matthew Kuperstein. On August 28, 2015, ALJ Kuperstein issued a decision which held that the plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff timely requested review by the Office of Disability Adjudication and Review Appeals Council. Plaintiff's request was denied on June 16, 2016. This appeal followed.

As instructed by the Court, the parties entered a joint stipulation of facts on February 22, 2017, which is incorporated herein by reference. (Dkt. #16-2.)

## STANDARD

Under the Social Security Act, an individual who is disabled within the meaning of the Act is entitled to benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations set forth a five-step sequential evaluation for adjudicating claims for disability insurance benefits and supplemental security income:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits h[er] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity[1] to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983); see also 20 C.F.R. § 404.1520. The burden of proof is on the claimant through the first four steps, while the Commissioner bears the

---

[1]Residual functional capacity ("RFC") is defined as the most a claimant can do in a work setting despite her limitations. 20 C.F.R. § 404.1545(a)(1).

3

burden of proof at the fifth step.  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

This Court's review of the Commissioner's decision is limited in scope.  Specifically, "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ."  42 U.S.C. § 405(g).  Therefore, this Court may set aside a determination "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).  Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.; Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015)(*citing* Richardson v. Perales, 402 U.S. 389, 401 (1971).

Without substituting a court's judgment for that of the Commissioner, review of administrative decisions is intended "to ensure a just and rational result between the government and the claimant . . . ."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  To that end, the court seeks to find substantial evidence to support the Commissioner's decision through plenary review of the administrative record.  Ibid.  If substantial evidence is found, even where there may also be substantial evidence to support the plaintiff's contrary position, the Commissioner's decision must stand.  *See* Bonet ex rel. T.B. v.

4

Colvin, 523 F. App'x 58, 59 (2d Cir. 2013); Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

**DISCUSSION**

I.  **The Treating Physician Rule**

Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinion of plaintiff's treating physician, Dr. Rao.  Plaintiff further asserts that the ALJ erred by substituting his own judgment for that of a medical doctor and failing to fully develop the record.  (Pl. Br. 4-19.) Specifically, plaintiff argues that the ALJ did not properly consider and discuss the statutory factors that must be considered and discussed when assigning less than controlling weight to the opinion of a treating physician. (Id. at 7.) Additionally, in regard to the development of the record, the plaintiff argues that when the ALJ sees a gap in the record, there is a duty to fill the gap.  (Id. at 18-19.)

The treating physician rule provides that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (*quoting* 20 C.F.R.

5

§ 404.1527(d)(2)); *see also* Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) ("A treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician"). "If the ALJ does not give controlling weight to a treating physician's opinion, the ALJ must provide 'good reasons' for the weight given to that opinion." Garcia v. Comm'r of Soc. Sec., 208 F. Supp. 3d 547, 552 (S.D.N.Y. 2016)(*quoting* Halloran v. Barnhart, 362 F.3d 28, 32-33 (2d Cir. 2004). Indeed, "[c]ase law holds that failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." Garcia, 208 F. Supp. 3d. at 552 (internal quotation and citation omitted).

"The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (*citing* Schupp v. Barnhart, No. Civ. 3:02CV103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)). It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same

6

report, where the record contained conflicting opinions on the same medical condition." Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at 4 (W.D.N.Y. Aug. 4, 2015) (*citing* Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)). In determining what weight to assign a medical opinion, the ALJ considers the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors. 20 C.F.R. § 404.1527.

Additionally, "it is emphatically a function of a district judge to determine 'if there are gaps in the administrative record' requiring remand to the Commissioner 'for further development of the evidence.'" Borgos-Hansen v. Colvin, 109 F. Supp. 3d 509, 529 (D. Conn. 2015)(quoting Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999)).

As the parties have already stipulated, Dr. Rao is an internist working with the Southwest Community Health Center ("Southwest"). (Dkt. #16-2, ¶ 45.) Plaintiff has been a patient at Southwest since May 2010 and has been treated by Dr. Rao since at least October, 2010. (Id.) On May 18, 2015, Dr. Rao completed a form titled "MEDICAL SOURCE STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)." (R. 764.) Dr. Rao opined that plaintiff could occasionally lift up to 20 lbs.;

7

could not carry any weight; would be limited to sitting, standing, or walking only one hour each in an eight hour workday; would be absent from work four or more times per month; could never reach, handle, finger, feel, push, or pull with her hands; could never utilize foot controls; and could never climb ladders, balance, stoop, kneel, crouch or crawl. (R. 765-67.) Additionally, Dr. Rao opined that plaintiff would be unable to work around unprotected heights, moving mechanical parts, humidity, dust, odors, extreme temperatures, and vibrations. (R. 768.) Dr. Rao concluded that the plaintiff could shop, travel independently, use public transit, prepare simple meals, care for her hygiene, and use paper files. (R. 769.)

In his decision, the ALJ noted that Dr. Rao, plaintiff's primary care provider, had submitted a medical source statement. (R. 31.) After confirming that the statement supported a "less than sedentary residual functional capacity," the ALJ went on to assign Dr. Rao's opinion "little weight." (Id.) In explaining why he only gave Dr. Rao's opinion little weight, the ALJ stated that Dr. Rao's opinion is "inconsistent with treatment notes showing only routine visits and benign physical findings." (R. 31.) In support of this contention the ALJ cited exhibits 12F, 13F, 18F, and 23F as examples of this inconsistency. Further, the ALJ provided that Dr. Rao's medical source statement was inconsistent with his own treatment notes, citing to exhibit

8

15F. (Id.) In further support of his decision to discount Dr. Rao's opinion, the ALJ pointed out that Dr. Rao's opinion was also, allegedly, inconsistent with the plaintiff's activities of daily living and was quite conclusory, being a checklist format with little explanation. (Id.)

When, as here, the ALJ has highlighted alleged inconsistencies or gaps in the medical records it is incumbent upon the ALJ to contact the treating physician and develop the record. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). It is clear to the Court that the ALJ is questioning the basis for Dr. Rao's opinion by asserting that it is contrary to the other findings of Dr. Rao and the other medical evidence of record. When that is the case "the proper course of action is not to simply reject the physician's opinion." Wade v. Colvin, No. 3:15CV47 (DJS), 2016 WL 1170917, at *9 (D. Conn. March 24, 2016).

As indicated by the stipulated facts, and a review of the record, Dr. Rao has been treating plaintiff in some capacity since 2010. Many of the records from Southwest indicate routine visits and follow up appointments for medication refills. In May of 2015, Dr. Rao completed the contested medical source statement, and contemporaneous treatment records from Southwest were filed as a separate exhibit. (R. 727-37.) The ALJ, in discounting the medical source statement of Dr. Rao, indicates

9

that the contemporaneous treatment records are inconsistent with the medical sources statement in that they show "problems with peripheral neuropathy of both feet with some muscle spasm with reduced range of motion of the lumbar spine, but otherwise normal." (R. 31.) However, the record indicates that Dr. Rao assessed the patient to have osteoarthritis, pain in the ankle and foot, obesity, and polyneuropathy. (R. 728.) The record continues and notes "severe arthritis of both hands, peripheral neuropathy and lumbar back pain." (R. 731.) Further still, the record indicates severe peripheral neuropathy in both feet with tingling and numbness. (R. 735.)

In addition to having concerns with the contemporaneous treatment records, the ALJ also states that the early examinations show no ongoing lumbar spine problems, that there is no support for the upper extremity limitations or the foot controls limitation. (R. 31.) However, a review of the evidence shows that some of the records contain indications of intense pain (*See* R. 593, wherein plaintiff reports pain at being 10 out of 10), or reports of swelling in plaintiff's hands or pain in her feet. (R. 540, 599.) Some reports also indicate tenderness in the lumbar spine area and the ordering of a lumbar MRI in October, 2013. (R. 635-37.)

The Court does not ignore the fact that Dr. Rao's medical source statement indicates severe limitations on plaintiff's

10

ability, and includes little in the way of explanation or findings. Indeed, the ALJ found that the statement was conclusory, being only a checklist with "very little explanation." (R. 31.) The statement does, however, include two brief notations indicating that the difficulty stems from back pain, arthritis in the hands, and severe peripheral neuropathy. (R. 765, 768.) Furthermore, even if he only checks a yes or no box on a form, a treating physician is, by that action, expressing a medical opinion. *See* Thornton v. Colvin, No. 3:13-CV-1558 CSH, 2016 WL 525994, at *4-*5 (D. Conn. Feb. 9, 2016).

Given that the ALJ perceived conflict and inconsistency between Dr. Rao's treatment notes and his medical source statement, the ALJ had an obligation to further develop the record and investigate the inconsistency. Indeed, where there is a gap in the record, as here where the treatment notes are somewhat benign and the medical sources statement is severe, the ALJ has an affirmative duty to develop the record. *See* Wade v. Colvin, No. 3:15CV47 (DJS), 2016 WL 1170917, at *9 (D. Conn. March 24, 2016). This duty stems from the "non-adversarial nature of a benefits hearing[.]" Id; *See also* Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)(stating "[i]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the

11

treating physician and to develop the administrative record accordingly.").

In this instance, it is Dr. Rao who has been treating the plaintiff for a number of years. In his role as a treating physician, Dr. Rao has presumably "examined the patient at intervals; taken the patient's oral history; ordered tests, examined the test results, and discussed them with the patient; prescribed medication for the patient; conferred with the patient from time to time; [and] recommended (or performed) surgery on the patient if required." Thornton, 2016 WL 525994, at *4. It is because of this connection and role that a treating physician is treated with such high regard. Id.

The undersigned finds that in this case the ALJ has not fulfilled its obligation to fill gaps which exist in the record. The Court has no opinion on the veracity or accuracy of Dr. Rao's opinion. However, "further development of the record is necessary to place the Court in a position to decide whether the ALJ's decision denying benefits (if he adheres to it after remand) 'is based upon legal error or is not supported by substantial evidence.'" Borgos-Hansen v. Colvin, 109 F. Supp. 3d 509, 531 (D. Conn. 2015)(quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)). It has been held in this Circuit that,

> [w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of

12

no disability creates an unacceptable risk that a
claimant will be deprived of the right to have her
disability determination made according to the correct
legal principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987). The Court is aware and acknowledges that the issue in dealing with development of the record is "whether the missing evidence is significant." Santiago v. Astrue, 2011 WL 4460206, 3:10-cv-937 (CFD) at *2 (D. Conn. Sept. 27, 2011)(citing Pratts v. Chater, 94 F.3d 34, 37-38 (2d Cir.1996). The Court finds that the information which could be gleaned from re-contacting Dr. Rao would be significant in light of his medical source opinion, which would be dispositive on the issue of disability if upheld.

In a similar situation, the Second Circuit Court of Appeals has determined that failure to include findings does not mean that they do not exist, and a medical provider may be unaware that an ALJ would consider that information critical. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). The Court finds the words of the Honorable Judge Charles Haight instructive, in this case:

> [t]he ALJ's conclusion [regarding the supportability of Dr. Rao's opinion] may be correct. It may be immune from challenge. But the Court is not in a position to leave the ALJ's denial of disability benefits intact until a gap in the administrative record is filled. That gap is the result of the ALJ's failure to ask Dr. [Rao] to explain h[is] opinion in the light of the other medical evidence. If on remand the inquiry is put to Dr. [Rao], in words or substance, "Is your opinion that this patient is disabled supported by the medical records," []he will

13

> presumably either say "yes" and explain why (with references to the record), or []he will acknowledge that the records do not support and may even be contrary to h[is] opinion, coupled with an explanation (if []he is so minded) of why []he adheres to h[is] opinion nonetheless.

Borgos-Hansen v. Colvin, 109 F. Supp. 3d 509, 531 (D. Conn. 2015). Indeed here, Dr. Rao should have been contacted to explain how, in his role as a treating physician, he finds plaintiff to suffer from the severe limitation listed in his medical source opinion.

While not the gravamen of the Court's concern with the ALJ's ruling, the Court is also troubled by the claims of substantial evidentiary support for the decision to discount Dr. Rao's medical source statement. Specifically, the ALJ points to inconsistency with the treatment notes from exhibits 12F, 13F, 18F, and 23F. Exhibits 12F and 23F pertain to treatment at Cardiology Physicians and St. Vincent's Medical Center, both relating to a Left Coronary Angiography performed on June 6, 2014. (R. 681, 1223-48.) The records in 12F show a few visits prior to the procedure, on May 2 and June 9, 2014. (R. 671-76.) The records from these visits show patient complaints of chest discomfort and shortness of breath, but do not offer support or opposition to the findings of Dr. Rao. Indeed, the information in these records was focused on the procedure and was nearly a year before the medical source statement was completed.

14

Additionally, Exhibit 13F covers four years from May 2011 to May 2015 and contains records from Cardiac Specialists, P.C. (R. 686.) Most of the records are follow up examination forms, containing a single sheet per appointment and very little legible information. (R. 686-90, 692-94.) While the records cover a long span of time, the Court is troubled by the assertion that these records contain information contrary to the opinion of Dr. Rao as it does not appear that they contain much beyond brief notations and physical examination notes along with medication lists. Finally, exhibit 18F is virtually useless to evaluate the plaintiff's health or disability. The exhibit contains a total of six pages (R. 756-61.) One page is an improperly submitted document relating to the contact and insurance information for a patient unrelated to plaintiff. (R. 760.) Two of the other pages are forms that were left blank due to cancellation or rescheduling. (R. 757, 761.) The only records of substance in exhibit 18F are two visits with Dr. Feintzig on March 26, 2014 and January 21, 2015. (R. 756, 758-59.) The records indicate that they are follow ups and contain lists of medications and few findings or assessments. On one visit the plaintiff reports that she would like to go back to the gym and likes to volunteer. (R. 758.) It is unclear to the Court how these sparse records (even taken together) show substantial evidence that contradicts the opinion of Dr. Rao

15

and, unfortunately, the ALJ's decision failed to specify or explain the alleged contradiction.  Upon remand, if the ALJ still asserts that such a contradiction exists, the Court asks that the ALJ articulate with specificity how it contends that these records stand in opposition to Dr. Rao's opinion.

Having determined that the ALJ failed to apply the correct legal standard the Court does not need to reach the second stage of review and analyze the ALJ's findings under the substantial evidence standard.  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

On remand, the ALJ should fill the gaps and inconsistencies in the record by seeking out additional information from Dr. Rao regarding his medical source statement.

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #16) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #17) is DENIED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States court of appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 30th day of September 2017, at Hartford, Connecticut.

                                        /s/
                              Robert A. Richardson
                              United States Magistrate Judge